IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RUFUS ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:21-CV-356-KFP |
| ) | |
| THE CITY OF MONTGOMERY, ) | |
| ALABAMA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rufus Ellis sued the City of Montgomery, Alabama, alleging it terminated his employment because of his disability in violation of the Americans with Disabilities Act Amendments Act and the Family and Medical Leave Act. Doc. 1. A jury found in the City's favor, and the Court entered a Final Judgment against Ellis on August 11, 2022. Doc. 63. Ellis has filed a Motion to Alter, Amend, or Vacate the Decree or, in the Alternative, Motion for a New Trial. Doc. 64. The City submitted a response (Doc. 67) to which Ellis filed a reply (Doc. 68). For the following reasons, Ellis's motion is DENIED.

**I.    BACKGROUND**

The City hired Ellis in 2003, and he served as Director of Old Selma Road Community Center from 2008 to 2019 in the Parks and Recreation Department. In June 2019, physicians diagnosed Ellis with multiple sclerosis. On August 8, 2019, the City terminated Ellis's employment. Ellis filed this lawsuit alleging the City unlawfully discharged him based on his disability. Doc. 1.

The trial commenced on August 8, 2022. During jury selection the parties considered a venire of 14 prospective jurors excluding those excused for cause. Ten venirepersons were white and four were African American. Doc. 66 at 12. The City exercised its three peremptory strikes against three of the four African American prospective jurors. *Id.* at 4. Subsequently, Ellis objected to the City's peremptory strikes asserting the City struck the three venirepersons because of race. *Id.* at 3. The petit jury consisted of seven white and one African American juror. *Id.* at 4.

Outside the jury's presence, the Court conducted a *Batson* hearing. Because the City used all its peremptory challenges on African American venirepersons, of which there were only four, the Court found Ellis presented a prima facie case of racial discrimination. *Id.* at 5. The City offered race-neutral justifications for each challenge. *Id.* at 5–7, 13–17. The Court accepted the City's proffered explanations, found Ellis did not show discriminatory intent, and overruled Ellis's objections. *Id.* at 18. Ellis filed the instant motion after the trial.[1]

## II.   LEGAL STANDARD

### A.   Motion to Alter Final Judgment or for New Trial

Federal Rule of Civil Procedure 59 permits courts to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Court may order a new trial, for instance, where

---

[1] Following the parties' strikes, the Court asked whether the parties were satisfied with the jury, and both parties indicated that they were satisfied. No party indicated that there was anything further to consider. Thus, the Court directed the venire be returned to the courtroom for the jury's announcement. Only then did Plaintiff's counsel raise any objection to the strikes.

"the verdict is against the weight of the evidence, . . . the damages are excessive, or . . . the trial was not fair . . . and . . . raise[s] questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). Ultimately, a court may grant a new trial to prevent a "miscarriage of justice." *Id.* (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)).

Rule 59 also allows courts to alter, modify, or amend a judgment. Fed. R. Civ. P. 59(e). Rulings on motions to alter or amend are left to the trial judge's discretion. *See Taylor v. First N. Am. Nat'l Bank*, 331 F. Supp. 2d 1354, 1355 (M.D. Ala. 2004) (quoting *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)). This Court has acknowledged four grounds on which it may grant a motion to alter or amend: "(1) manifest errors of law or fact upon which the judgment was based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice in the judgment; and (4) an intervening change in the controlling law." *Id.*

**B.**   ***Batson* Challenges**

Parties are prohibited from challenging prospective jurors based on race. *Vinson v. Koch Foods of Ala., LLC*, 12 F.4th 1270, 1276 (11th Cir. 2021) (citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)). When a party objects to a strike, courts analyze the challenge using a three-step test. The Eleventh Circuit has outlined the analysis:

> (1) the objector must make a prima facie showing that the peremptory challenge was exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the challenger's

> stated reasons were the actual reasons or instead were a pretext for discrimination.

*United States v. Lewis*, 40 F.4th 1229, 1242 (11th Cir. 2022) (citing *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019)). For step two, the challenger must only present a comprehensible reason that is not inherently discriminatory. The challenger need not show the justification is persuasive or plausible. *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995)). Meanwhile, courts scrutinize the challenger's credibility under the "totality of the relevant facts." *Parker v. Allen*, 565 F.3d 1258, 1271 (11th Cir. 2009).

The Eleventh Circuit has noted three instances lessening a challenger's credibility. First, a challenger's credibility is undermined "when the prosecutor's explanation for a strike is equally applicable to jurors of a different race who have not been stricken[.]" *Id.* (citing *Caldwell v. Maloney,* 159 F.3d 639, 651 (1st Cir.1998)). Second, a court may discredit a challenger's credibility "upon a comparative analysis of the jurors struck and those who remained . . . including the attributes of the white and black venire members[.]" *Id.* (citing *United States v. Houston,* 456 F.3d 1328, 1338 (11th Cir. 2006); *Turner v. Marshall,* 121 F.3d 1248, 1251–52 (9th Cir. 1997), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999)). Third, a challenger may not be credible "when the prosecution fails to engage in a meaningful voir dire examination on a subject that it alleges it is concerned[.]" *Id.* (citing *Miller–El v. Dretke,* 545 U.S. 231, 246 (2005)).

A challenger's failure to strike similarly situated venirepersons of different races is not pretextual so long as there are relevant differences between the prospective jurors. *Id.*

4

(quoting *United States v. Novaton*, 271 F.3d 968, 1004 (11th Cir. 2001)). A challenger's mistaken belief about a venireperson does not show pretext. *Id.* (citing *McNair v. Campbell*, 416 F.3d 1291, 1311–12 (11th Cir. 2005)). The objector always must prove discriminatory intent. *Houston*, 456 F.3d 1335 (citing *Batson*, 476 U.S. at 94 n.18). The trial judge is entrusted with assessing a challenger's credibility. *Rice*, 546 U.S. at 338 (quoting *Hernandez v. New York*, 500 U.S. 352, 364–66 (1991) (plurality opinion)).

### III.   DISCUSSION

Ellis objects to all of the City's peremptory challenges because the City used them against three of the four African American venirepersons. As the parties acknowledge, and the Court agrees, Ellis has shown a prima facie case of discrimination. Docs. 64 at 3, 66 at 5, 67 at 6. The questions are whether the City offered nondiscriminatory reasons for its strikes and whether the Court erred in crediting those justifications.

#### A.   City's First Peremptory Challenge

The City exercised its first peremptory challenge on Juror 13, an African American woman. Doc. 67 at 2. The City offered three reasons for striking Juror 13. First, she is employed as a paraprofessional at Montgomery Public Schools, which indicated to the City that she works with disabled children. Because this case alleged disability discrimination, the City contended Juror 13 would be susceptible to emotional appeals. *Id.* Second, the City noted Juror 13's spouse is an attorney for AT&T, though the City did not elaborate why this warranted a challenge. *Id.* Third, Juror 13 had a Doctor of Philosophy in sociology, which the City associated with liberal views. *Id.* Ellis retorted not all individuals with doctorate degrees in sociology hold liberal ideologies. However, Ellis's counsel

conceded on Juror 13's occupation by saying, "[H]e may have some merit in that, you know, I mean, because I do think we're at a situation where we feel we've been discriminated against because of our disability and special ed[ucation] is a disability thing. So I can see his point of view there." *Id.* at 6.

The City's justifications are legitimate, nondiscriminatory, and credible. A venireperson's occupation, and their partner's, is a valid race-neutral justification. *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1253–54 (11th Cir. 2014); *see J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 n.14 (1994); *United States v. Steele*, 178 F.3d 1230, 1235–36 (11th Cir. 1999). Likewise, a venireperson's education level is a legitimate reason to use a peremptory challenge. *See, e.g.*, *United States v. Nelson*, 450 F.3d 1201, 1208 (10th Cir. 2006); *United States v. Velazquez-Rivera*, 366 F.3d 661, 666 (8th Cir. 2004); *Caldwell v. Maloney*, 159 F.3d 639, 654–55 (1st Cir. 1998); *United States v. Marin*, 7 F.3d 679, 686–87 (7th Cir. 1993); *United States v. Mixon*, 977 F.2d 921, 923 (5th Cir. 1992); *United States v. Lane*, 866 F.2d 103, 106 (4th Cir. 1989). Accordingly, Ellis's objections based on Juror 13's occupation and doctorate are unpersuasive.

Furthermore, striking venirepersons based on political ideology is permissible. *See, e.g.*, *United States v. Prince*, 647 F.3d 1257, 1263 (10th Cir. 2011). Although Ellis claims the label of liberal "is often a subtle reference to blacks or people sympathetic to the black cause," Ellis provides no evidence the term was used that way here. Ellis attempts to buttress this claim through the expert affidavit testimony of Derryn E. Moten, Ph.D., a historian at Alabama State University. Doc. 68-2. Preliminarily, Ellis did not afford the City an opportunity to rebut Dr. Moten's testimony because Ellis only filed the affidavit

6

with a reply brief rather than with his motion. Moreover, there is no way for the City or the Court to scrutinize Dr. Moten's qualifications or opinions under *Daubert* and its progeny. Thus, the Court grants Dr. Moten's opinions little weight. Nevertheless, the substance of Dr. Moten's opinion is generalized and does not support Ellis's contention that the City used "liberal" as a label for African Americans. Dr. Moten relies on platitudes, saying, "[T]he word 'liberal,' especially in today's political climate, is frequently used to describe Blacks who often support the policies of the National Democratic Party and vote for Democratic candidates." *Id.* at 2–3. Yet, Dr. Moten provides no citations to historical evidence, and he does not opine how the City's use of "liberal" in this instance meant African Americans. Absent support, Dr. Moten's statements are unhelpful. Therefore, based on precedent and the credibility determination, Ellis's objection to the City's challenge of Juror 13 is unfounded.

B.   **City's Second Peremptory Challenge**

The City used its second peremptory challenge on Juror 15. The City claimed it struck Juror 15 because she and her husband both worked in youth services or as youth counselors. The City postulated Juror 15's education likely focused on psychology. For the same reasons as Juror 13, the City asserted individuals with psychology backgrounds tend to be liberal and susceptible to emotional appeals. Doc. 66 at 6–7. Ellis objected to the City's speculation that Juror 15 had a psychology background. *Id.* at 7. Additionally, Ellis offers testimony from Dr. Moten hypothesizing the City's counsel's reference to "those people" is pretextual for race. Doc. 68-2 at 2. Ellis's attempt to impute a racial motive to the City's counsel's comment, removed from its context, is unpersuasive.

First, Ellis's contention that the City incorrectly assumed Juror 15 had a background in psychology does not meet Ellis's burden. As noted, a challenger's mistaken understanding about a venireperson is not proscribed by *Batson*. Rather, the objector must show the reason offered is a pretext for discrimination. *Parker*, 565 F.3d at 1271 (citing *McNair*, 416 F.3d at 1311–12). Even if the City erroneously thought Juror 15's education was in psychology, that does not prove discriminatory intent. Moreover, a litigant may strike a juror based on political ideology. *Prince*, 647 F.3d at 1263. Thus, the City's reasoning, mistaken or not, that Juror 15 would be liberal if she had an educational background in psychology and that it should exclude people with liberal ideology on the petit jury is not constitutionally infirm. Moreover, to the extent Ellis contests the City's second challenge based on pattern, the record is devoid of evidence that the City did not strike all other individuals with education backgrounds, real or speculative, in psychology or sociology. Doc. 66 at 9–10.

Second, Ellis's proffered expert testimony from Dr. Moten asserting the City's counsel's reference to "those people" indicates a racial animus is unsupported by the record. When the City's counsel mentioned "those people," he was referring to individuals with backgrounds in psychology. Specifically, the City's counsel said:

> That goes right back to what I said before about these people appear to be either employed or educated in a psychology field or work in the field of psychology. And as a general rule, I find those people to be fairly liberal in their views, and they also seem to be fairly susceptible to pleas for emotional attachment, which I'm sure that the plaintiff in this case will try to do.

*Id.* at 6–7. The City's counsel's comment indicates he was referring to youth services workers being educated in psychology and those educated in psychology tending to be

8

more liberal. Ellis cannot sincerely argue the City's counsel was using "those people" or "these people" to refer to African Americans as a group in this instance. To abide Ellis's logic, one would have to accept that all African Americans are "employed or educated in a psychology field" and are consequently "fairly liberal in their views." Ellis's contention is untenable. The Court does not question Dr. Moten's assertion that "those people" and similar phrases historically have been used in certain contexts to refer to minority groups. Yet, to maintain that the City's counsel was making that same reference here would require the Court to ignore the context. Therefore, the City's justification for its second peremptory challenge is credible and not pretextual, and, accordingly, did not violate *Batson*.

### C.   City's Third Peremptory Challenge

The City employed its final peremptory challenge on Juror 23. The City maintained it struck Juror 23 for four race-neutral reasons. First, Juror 23 is employed as an assistant director of the Veterans Administration, which the City presumed meant the VA in Montgomery. The City believed individuals working for the VA are likely liberal in their views. *Id.* at 13–14. Second, Juror 23 had a degree in community development, which the City understood to encompass the study of liberal political and social change. *Id.* at 14. Third, the City claimed Juror 23 admitted to watching CNN, which the City took as indicative of Juror 23's liberal ideology. *Id.* Finally, the City noted Juror 23 did not lower her mask when speaking as instructed by the Court. The City interpreted this action to suggest Juror 23 might not listen to the Court's instructions. *Id.*

Ellis responded that Juror 23's employment by the government would likely make her more sympathetic to the City because it is a government entity. *Id.* at 14–15. Ellis added

9

Juror 23's disobedience to the Court's directive to lower her mask was potentially a concern about COVID-19, she could not hear the Court, or she forgot about the Court's direction. *Id.* at 15–16. Ellis also claimed at the *Batson* hearing that other (unidentified) jurors who the City did not strike admitted to watching CNN. *Id.* at 16–17. Meanwhile, in the instant motion, Ellis's counsel argues viewing CNN was not a race-neutral justification, although Ellis's counsel says, "African Americans, as many people of all races, and genders, including the undersigned, watch or listen to CNN." Doc. 64 at 3. By his own admission, Ellis's counsel demonstrates watching CNN is a race-neutral reason because "people of all races[] and genders" view CNN. *Id.*

As noted, striking a venireperson because of their occupation, education, and political ideology is a legitimate justification. *See Madison*, 761 F.3d at 1253–54; *Prince*, 647 F.3d at 1263; *Nelson*, 450 F.3d at 1208. Moreover, Juror 23's failure to follow the Court's instructions has no racial connotation. That Ellis's counsel believes Juror 23 could not hear, forgot the instruction, or was concerned about COVID does not imply racial discrimination. Nothing about the City's explanations, alone or taken together, suggest they were pretextual. While Ellis disagrees with the challenge's logic, that does not render the City's strike discriminatory.[2]

---

[2] The Court also notes Ellis's counsel did not rate Juror 23 favorably.

## IV. CONCLUSION

Ellis has presented no evidence establishing he is entitled to a new trial or an amended judgment based on an erroneous application of the law resulting in a miscarriage of justice. Accordingly, Ellis's motion (Doc. 64) is DENIED.

DONE this 7th day of October, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE